UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
THOMAS J. MCNULTY, 05-R-4509,       :
             :
          Plaintiff,     :
             :          **OPINION AND ORDER**
    v.               :          11-CV-08320 (ER)
             :
NURSE YANEKA, Registered Nurse, NORMA  :
CRUZ, Registered Nurse, LEE ISABEL, Medical  :
Director, Correction Medical Care Inc., ADRAIN  :
(BUTCH) ANDERSON, Dutchess County Sheriff,  :
CORRECTION MEDICAL CARE INC., Private  :
Medical Care Corporation at the Dutchess County  :
Jail,                :
         Defendants.   :
----------------------------------------------------------------x

RAMOS, D.J.:

Plaintiff Thomas J. McNulty ("McNulty"), appearing *pro se*, brings this action pursuant

to 42 U.S.C. § 1983 against five defendants whom he alleges violated his constitutional rights

while he was incarcerated at the Dutchess County Jail.  Specifically, Plaintiff alleges that the

defendants deprived him of his Eighth Amendment right to medical care by providing inadequate

treatment for an infection on his abdomen and rejecting his requests to be hospitalized.

Plaintiff has asserted claims against one organization and four individuals:  (1) Correction

Medical Care Inc. ("CMS"), (2) Registered Nurse Yaneka Alaimalo (named in the Complaint as

"Nurse Yaneka" and referred to herein as "Yaneka"), (3) Registered Nurse Norma Cruz

("Cruz"), (4) Medical Director of CMS, Lee Isabel ("Isabel"), and (5) Dutchess County Sheriff,

Adrain (Butch) Anderson ("Anderson").  (Compl. at 1.)  McNulty sues each of the natural

person defendants in their individual capacities.  (*Id.* ¶¶ 42-45.)

All Defendants move for judgment on the pleadings pursuant to Rule 12(c).

Additionally, Defendants Yaneka and Cruz move to dismiss the Complaint for insufficient

service of process pursuant to Rule 12(b)(5).  Although the Court finds that service was not

properly effected on Defendants Yaneka and Cruz, because Plaintiff can show good cause why

service was not made, their motion to dismiss for insufficient service of process is DENIED.

However, for the reasons discussed below, because Plaintiff fails to state a claim against

Defendants Yaneka and Cruz, Plaintiff is denied additional time to effect service.  Defendants'

motion for judgment on the pleadings is GRANTED.

**I. Factual Background**

    **A.  Plaintiff's Allegations Regarding Improper Medical Treatment by Defendants
        Yaneka, Cruz, and Isabel**

On July 18, 2011, Plaintiff was admitted to the Dutchess County Jail as an inmate.

(Compl. ¶ 1.)  Upon Plaintiff's admission, an initial medical assessment was performed by Nurse

May.  (*Id.*)  Plaintiff informed Nurse May that he was HIV-positive, and Nurse May recorded

that fact and the names of Plaintiff's HIV medications in Plaintiff's medical file.  (*Id.*)  On July

21, 2011, Plaintiff was examined by Defendant Isabel pursuant to a policy that inmates with

serious medical conditions, such as HIV, be seen within five days of their admission to the

prison.  (*Id.* ¶ 2.)  During the examination, Isabel advised Plaintiff that he should wash his hands

regularly, as there were a high number of staph infections within the inmate population, and such

an infection could be detrimental to Plaintiff's health in light of his HIV-positive status.  (*Id.*)

From the time of his admission to the prison on July 18, 2011 until August 12, 2011, Plaintiff did

not require any medical treatment.  (*Id.* ¶ 4.)

On August 13, 2011, at 7:59 p.m., Plaintiff informed an officer at the prison that he had

an infected boil the size of a softball on his stomach, that he was in severe pain, and that he

required medical attention.  (*Id.* ¶ 5.)  The officer notified the medical department of Plaintiff's

condition, and was informed that the medical department was too busy to see Plaintiff at the

moment, and that Plaintiff would be called down to the medical department after the diabetic

check for the inmate population had been completed.  (*Id.* ¶ 6.)  At 9:38 p.m., after two more

calls to the medical department, Plaintiff was escorted to the department and seen by Defendant

Cruz.  (*Id.* ¶ 7.)  Plaintiff alleges that Cruz made a "cursory inspection" of the infection and gave

Plaintiff two aspirins before sending him back to his housing unit.  (*Id.* ¶ 8.)

Upon returning to his housing unit, Plaintiff requested to see Sergeant Burke ("Burke"),

the area supervisor, in order to file an inmate grievance complaint against Cruz "for her complete

lack of medical treatment."  (*Id.* ¶ 9.)  When Burke reported to Plaintiff's housing unit, Plaintiff

informed him that he was in extreme pain and needed medical attention due to his body's

inability to fight off infections.  (*Id.* ¶ 10.)  After Burke inspected Plaintiff's infection, he told

Plaintiff to "sit tight" while he went to speak to Cruz.  (*Id.* ¶ 11.)  Plaintiff alleges that after

returning to the housing unit, Burke informed Plaintiff that he had advised Cruz that Plaintiff

intended to file an inmate grievance complaint against her, and that he told Cruz that the

infection "doesn't look good at all."  (*Id.* ¶ 12.)  Burke informed Plaintiff that Cruz agreed to

reevaluate him, but advised Plaintiff that regardless of what should happen upon Cruz's

reevaluation, should Plaintiff get a fever, he should report his condition to the housing officer

immediately.  (*Id.* ¶¶ 12-13.)

At 11:00 p.m., Plaintiff was escorted down to the medical department to be reevaluated

by Cruz.  (*Id.* ¶ 13.)  After speaking with Plaintiff about his condition, Cruz advised him that she

was unaware that he was HIV-positive during her first examination, and that she had called

Isabel, who had ordered antibiotics for Plaintiff.  (*Id.* ¶ 14.)  Plaintiff informed Cruz that the

prescription of antibiotics "amounted to putting a band-aid on a gunshot wound" and that he

needed to go to the hospital to have the infection lanced and drained.  (*Id.*)  After Cruz informed

Plaintiff that he would be "ok," Plaintiff advised her that "she was out of her mind" and that he

would not be "ok." (*Id.* ¶ 15.) Plaintiff begged Cruz to call Isabel back and inform him as to the

seriousness of Plaintiff's condition. (*Id.*)

The following day, at 7:25 p.m., Plaintiff reported to Officer Stroka, the housing unit

officer, and informed him that he was in severe pain, had a "blazing fever," and needed

emergency medical care. (*Id.* ¶ 17.) Officer Stroka informed Plaintiff that he was a part-time

EMT worker and was aware of Plaintiff's condition. (*Id.*) Officer Stroka requested to see the

infection site and, upon examining it, stated "you have got to [be] kidding me." (*Id.* ¶ 18.)

Officer Stroka then called the medical department and spoke to Yaneka. (*Id.*) Officer Stroka

told Yaneka that Plaintiff needed emergency medical treatment and asked if he could send

Plaintiff down to the medical department to be evaluated. (*Id.* ¶ 20.) Yaneka informed Officer

Stroka that she would not see Plaintiff because he had already been seen by Cruz the night

before, and that there was nothing else she "could or would" do for him, as he was already

receiving antibiotics for his condition. (*Id.* ¶¶ 20-21.)

At 3:30 a.m., after Plaintiff had returned to his cell, Plaintiff was found "hooked over his

toilet appearing to be throwing up and in a lot of pain" by the officer on duty, Officer Ortero.

(*Id.* ¶ 23.) Officer Ortero immediately called the medical unit, and at 3:56 a.m., Cruz came to

Plaintiff's cell to examine him. (*Id.* ¶¶ 23-24.) Upon examining Plaintiff, Cruz made the

following assessment: "fever °102 degrees, body chills, diaphoresis and increased pain and

swelling to the abdominal site." (*Id.* ¶ 25.) Cruz informed Officer Ortero that it appeared that

Plaintiff had gone "septic" and that she feared that the infection was leaking into his

bloodstream. (*Id.*) After learning of Plaintiff's condition from Cruz, Isabel gave orders to have

him transported to Vassar Brothers Medical Center ("VBMC"). (*Id.* ¶ 26.) At 4:38 a.m.,

Plaintiff was rushed to VBMC "via life support unit." (*Id.* ¶¶ 26-27.) Upon admission to the hospital, Plaintiff was diagnosed with Methicillin-Resistant Staphylococcus Aureus ("MRSA") and administered morphine for his pain as the infection was lanced and drained. (*Id.* ¶ 27.) Plaintiff was then informed by the doctor on duty that if he was left untreated for any further period of time, his condition could have easily resulted in death. (*Id.*)

During Plaintiff's five-day hospitalization, he was put on an antibiotic drip and underwent surgery to remove the infection. (*Id.* ¶ 28.) Plaintiff was released from the hospital on August 19, 2011, and was instructed to take oral antibiotics for the next five days. (*Id.*)

## B. Plaintiff's Allegations Regarding CMC and Anderson

Plaintiff alleges that CMC is the healthcare provider at the Dutchess County Jail pursuant to a contract with Anderson. (*Id.* ¶ 32.) Plaintiff claims that since CMC contracted with Anderson, the number of instances of prisoners being deprived of medical treatment has been "systematic." (*Id.* ¶ 34.) Plaintiff further alleges that within the last year, two inmates have committed suicide, and another inmate has attempted suicide. (*Id.* ¶ 35.) CMC is responsible for referring inmates with mental health problems to mental health services. (*Id.*) Plaintiff appears to allege that CMC has failed to refer such inmates to mental health services because the cost of doing so would be deducted from the total amount of money CMC is paid under its contract. (*Id.*) Thus, according to Plaintiff, CMC is making medical decisions based on cost, rather than the medical needs of the inmates. (*Id.*) Additionally, Plaintiff alleges that Defendants CMC and Isabel have an unwritten policy that inmates will not be provided pain medication under any circumstance. (*Id.* ¶ 29.) Plaintiff also claims that Defendants made certain decisions with respect to his medical treatment based on cost rather than his actual medical needs, including placing Plaintiff on oral antibiotics rather than taking him to the hospital. (*Id.* ¶¶ 36, 38.)

Plaintiff further alleges that Defendant Anderson owes a duty of care to the inmates at the

Dutchess County Jail, and that such duty is non-delegable.  (*Id.* ¶¶ 32-33.)  Plaintiff claims that

Anderson "knew or should have known" that CMC's "level of treatment would diverge from

[the] public interest" because, unlike public employees, CMC's employees are "compelled" to

make decisions to benefit CMC, without consideration of what is in the best interest of the

inmates.  (*Id.* ¶ 34.)  Plaintiff alleges that the two suicides and one attempted suicide within the

last year should have been a "red flag" for Anderson that CMC was making medical decisions

based on cost.  (*Id.* ¶ 35.)  Plaintiff claims that "if by way of discovery," he can prove that CMC

had a policy of making medical decisions based on cost, then both Defendants CMC and

Anderson become liable.  (*Id.* ¶ 37.)

## II. Rule 12(b)(5) Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of

process, a court may look to matters outside the complaint to determine whether it has

jurisdiction.  *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

"Conclusory statements that a defendant was properly served are insufficient to overcome a

defendant's sworn affidavit that he was never served with process."  *Id.* (quotation marks and

citation omitted).  When a defendant challenges the sufficiency of service pursuant to Rule

12(b)(5), the plaintiff bears the burden of proving its adequacy.  *Id.*

The Second Circuit has held that Federal Rule of Civil Procedure 4 is to be construed

liberally "'to further the purpose of finding personal jurisdiction in cases in which the party has

received actual notice.'"  *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986)

(quoting *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972)).  Incomplete or improper

service may lead a court to dismiss an action "'unless it appears that proper service may still be

6

obtained.'"  *Id.* (quoting *Grammenos*, 457 F.2d at 1070).  Thus, a court may dismiss an action

when it appears that "there is simply no reasonably conceivable means of acquiring jurisdiction

over the person of the defendant."  *Id.* (quoting *Stanga v. McCormick Shipping Corp.*, 268 F.2d

544, 554 (5th Cir. 1959)).

Defendants Yaneka and Cruz move to dismiss the action for improper service of process.

The docket for this Court indicates that service was effected upon Yaneka and Cruz by the U.S.

Marshals, (Docs. 27, 28), however, Defendants argue that service was improper under New York

Civil Practice Law and Rules ("CPLR") 308(2).  (Defs.' Aff. in Supp. at 5-6.)  Plaintiff disputes

that service was made pursuant to CPLR 308(2).  However, because none of the methods of

service articulated in Rule 4(e)(2) are applicable here, the Court will assume that service was

attempted pursuant to CPLR 308(2), which provides that service may be effected by personal

delivery to defendant's actual place of business, with a follow-up mailing to defendant's last

known residence or his or her actual place of business.[1]

CPLR 308(2) requires that service be made at the defendant's business address at the

time of service, and not when the cause of action arose.  *Jackson v. Cnty. of Nassau*, 339 F.

Supp. 2d 473, 478 (E.D.N.Y. 2004) (citing *Simmons v. Boro Med., P.C.*, 270 A.D.2d 477 (2d

Dep't 2000)); *see also Leab v. Streit*, 584 F. Supp. 748, 759 n.12 (S.D.N.Y. 1984) (holding that

compliance with CPLR 308(2) "is tested at the time of service").  Defendants argue that neither

Yaneka nor Cruz were employees of CMC on March 23, 2012, the date of delivery to the

---

[1] Rule 4(e) provides that service on an individual within a judicial district of the United States may be made
pursuant to the law of the state in which the district court sits or by doing any of the following:  (1) delivering a copy
of the summons and the complaint to the individual personally; (2) leaving a copy at the individual's dwelling or
usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each
to an agent authorized to receive service of process on behalf of the individual. Fed. R. Civ. P. 4(e).  Here, service
was not made at a residence, but rather at the Dutchess County Jail. (Docs. 27, 28.)  Accordingly, it appears that
service was made pursuant to New York state law, and not pursuant to any of the other articulated modes of service
in Rule 4(e).

Dutchess County Jail.  (Defs.' Aff. in Supp. at 5.)   Factual support for Defendants' argument has

been submitted in the form of an affidavit of the Health Services Administrator for CMC,

Rebecca Oyoo, R.N.  (Doc. 36.)  Ms. Oyoo's affidavit states that Yaneka's last day of

employment by CMC was January 2, 2012, and that Cruz's last day of employment was January

12, 2012.  (*Id.*)  Plaintiff has offered no evidence to rebut Defendants' contention regarding the

termination date of Yaneka's and Cruz's employment by CMC.  Accordingly, because the

evidence suggests that Defendants were no longer employed by CMC as of the date of service,

service cannot be sustained pursuant to CPLR 308(2).

Although service was not effected within 120 days after the filing of the Complaint, as

mandated by Rule 4(m), dismissal is not required if the plaintiff can show "good cause" why

service was not made.  Fed. R. Civ. P. 4(m).  Here, Plaintiff timely directed the U.S. Marshals

Service to effect service on Defendants Yaneka and Cruz at CMC on January 16, 2012.  (Docs.

27, 28.)  Thus, at the time Plaintiff requested that service be effected, Defendants' employment

at CMC had only recently concluded and Plaintiff therefore had good cause to direct the U.S.

Marshals to serve Defendants at CMC.  Although Defendants were no longer employees of CMC

at the time service was made, there is nothing in the record to suggest that Plaintiff did not act

diligently in his attempt to serve Yaneka and Cruz.  Accordingly, the Court finds that dismissal is

not mandated by Plaintiff's failure to effect service.  Because the Court finds that dismissal of

Plaintiff's claims against Defendants Yaneka and Cruz is appropriate under Rule 12(c), however,

the Court declines to extend the time for service pursuant to Rule 4(m).

**III. Rule 12(c) Motion to Dismiss**

    **A.  Standard of Review**

        Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

        When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010).  However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

        The same standard applies to motions to dismiss *pro se* complaints.  *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010).  However, the Court remains obligated to construe a *pro se*

complaint liberally, *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a *pro se*

plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau*

*of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006). In order to survive a motion to dismiss, a

plaintiff's pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Iqbal,* 556 U.S. at 678. A complaint that "tenders naked assertions devoid of

further factual enhancement" will not suffice. *Id.* (quoting *Twombly,* 550 U.S. at 557) (internal

quotation marks and brackets omitted); *see also Triestman,* 470 F.3d at 477 ("[*P* ]*ro se* status

'does not exempt a party from compliance with relevant rules of procedural and substantive

law.'") (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

### B.  Plaintiff's Allegations Against Defendants Yaneka, Cruz, and Isabel

The Eighth Amendment protects individuals from "cruel and unusual punishments." U.S.

Const. amend. VIII. "[C]ruel and unusual punishments" include punishments that "involve the

unnecessary and wanton infliction of pain." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.

2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)) (internal quotation

marks omitted). Although "society does not expect that prisoners will have unqualified access to

health care," a prisoner can nevertheless succeed on an Eighth Amendment claim arising out of

the medical care he or she received by demonstrating that a prison official acted with "deliberate

indifference to the inmate's serious medical needs." *Id.* (internal quotation marks and citations

omitted). The "deliberate indifference" standard embodies an objective and subjective prong.

*Farmer v. Brennan*, 511 U.S. 825, 838-39 (1994). A prisoner's claim must be dismissed unless

both prongs are satisfied. *Sonds v. St. Barnabas Hosp. Correctional Health Servs.*, 151 F. Supp.

2d 303, 310 (S.D.N.Y. 2001).

### 1. Sufficiently serious condition.

The objective component of the "deliberate indifference" standard requires that the alleged deprivation be "sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks and citations omitted). A deprivation of medical care is "sufficiently serious" if two prongs are satisfied: (1) the prisoner was actually deprived of adequate medical care; and (2) the inadequacy in medical care was sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Prison officials who act "reasonably" in response to an inmate's health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47). The inadequacy in medical care is sufficiently serious if "a condition of urgency . . . that may produce death, degeneration, or extreme pain" is present. *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks and citations omitted). Relevant factors to this inquiry include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (internal quotation marks, brackets, and citations omitted).

If the inadequate care complained of consists of a failure to provide *any* medical care, courts must examine whether the prisoner's underlying medical condition itself is "sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). Alternatively, when a prisoner complains not about the failure to treat, but rather about the inadequacy in the treatment that was actually provided or a temporary delay in the provision of otherwise adequate medical treatment, the seriousness inquiry is "narrower," *id.*, and focuses

11

on the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Smith*, 316 F.3d at 186. Thus, even in cases where an inmate "suffers from an admittedly serious medical condition," if the alleged deficiencies in treatment are "minor and inconsequential," those deficiencies will not sustain an Eighth Amendment claim. *Id.* "[T]he actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* at 187. Although there is no precise metric to determine when a prisoner's medical need is sufficiently serious, the standard contemplates a "condition of urgency" that may result in "degeneration" or "extreme pain." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (internal quotation marks and citations omitted).

Here, Plaintiff alleges that the medical treatment he received at the prison was inadequate, and that there was an unreasonable delay in the provision of sufficient treatment. Accordingly, the Court must focus on the risk of harm from the challenged deprivation of care in analyzing whether the alleged deprivation was sufficiently serious.[2] Plaintiff alleges that he was examined twice while at the prison but was only prescribed oral antibiotics, which he argued was insufficient to address his serious medical condition. Plaintiff further alleges that as a result of Defendants' one-day delay in providing adequate medical care, he developed a fever of 102 degrees, experienced "increased pain" and swelling to his abdomen, and went "septic" due to the infection leaking into his bloodstream. Plaintiff was ultimately transported to the hospital, where

---

[2] Plaintiff argues in his opposition papers that "there is no question" that MRSA is an "objective serious medical need." (Pl.'s Mem. L. at 7.) While the Court does not dispute that MRSA is a serious health condition, because Plaintiff complains that the medical treatment he received was inadequate, the Court must focus on the risk of harm caused by the challenged deprivation, rather than the severity of Plaintiff's underlying condition. *See Smith,* 316 F.3d at 186.

he underwent surgery to remove the infection and spent a total of five days.[3]  Moreover, Plaintiff alleges that upon his admission to the hospital, his treating doctor informed him that if he was left untreated for any further period of time, his condition could have easily resulted in death.

The Court finds that Plaintiff's allegations are sufficient to demonstrate that the alleged deprivation of medical care was "sufficiently serious."  Plaintiff has alleged that after being prescribed oral antibiotics, he developed a high fever, experienced increased pain and ultimately had to undergo surgery to remove the infection.  Thus, accepting all factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that the alleged deprivation in treatment subjected Plaintiff to a "significant risk of serious harm."

### 2.  Sufficiently culpable state of mind.

The subjective component of the "deliberate indifference" standard requires that the prison official acted with a "sufficiently culpable state of mind."  *Chance*, 143 F.3d at 702 (internal quotation marks and citation omitted).  The "deliberate indifference" standard "requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66 (citing *Farmer*, 511 U.S. at 835).  A prison official does not act with "deliberate indifference" to an inmate's medical needs unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837).  This is "equivalent to the familiar standard of 'recklessness' as used in criminal law." *Smith*, 316 F.3d at 184 (quoting *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (per curiam)).

---

[3] While Plaintiff indicates in the Complaint that he only underwent one surgery, Compl. ¶ 28, in his opposition papers, Plaintiff suggests that he actually underwent two surgeries to remove the infection.  (Pls.' Mem. L. at 10, 20.)

A difference of opinion between a prisoner and prison officials regarding the appropriate course of medical treatment does not, as a matter of law, constitute "deliberate indifference." *Sonds*, 151 F. Supp. 2d at 311 (citing *Chance*, 143 F.3d at 703). Moreover, that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he desired, does not evidence a "sufficiently culpable state of mind." *Id.* Prison officials and medical officers have wide discretion in treating prisoners, and federal courts are generally hesitant to second-guess medical judgments and to constitutionalize claims which sound in tort law. *Id.* (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)). Accordingly, the determinations made by medical providers concerning the treatment of patients are given a "presumption of correctness." *Id.* at 312 (internal quotation marks and citation omitted).

### a. Defendants Cruz and Isabel.

Plaintiff alleges that he was examined by Cruz within two hours of his initial request for medical attention, and was seen again by Cruz approximately one hour after the original evaluation. During the second examination, Cruz advised Isabel of Plaintiff's condition, and Isabel then ordered that Plaintiff be placed on oral antibiotics for his infection. Although Plaintiff disagrees with this course of treatment, arguing that the prescription of oral antibiotics "amounted to putting a band-aid on a gunshot wound," negligence in diagnosis and treatment or mere disagreements between a prisoner and the treating medical provider over the appropriate course of treatment does not rise to the level of deliberate indifference.[4] *Sonds*, 151 F. Supp. 2d

---

[4] Plaintiff argues in his opposition papers that "it is a well-known fact" in the medical field that Bactrim, the antibiotic Plaintiff was prescribed by Isabel, is "clearly inappropriate and ineffective." (Pl.'s Mem. L. at 17.) However, both the Complaint and the opposition papers are devoid of any factual allegations to support Plaintiff's assertion that Bactrim is "well-known" to be ineffective for treating MRSA. The Complaint merely includes conclusory allegations that taking oral antibiotics for Plaintiff's infection would be "useless." (Compl. ¶ 15.) Mere disagreement over choice of treatment, or even negligence or medical malpractice, does not create a constitutional claim. *Stevens v. Goord*, 535 F. Supp. 2d 373, 384 (S.D.N.Y. 2008). Moreover, Plaintiff has not shown that Isabel's prescription of Bactrim for Plaintiff's infection was "'contrary to accepted medical standards.'" *Id.* at 385 (citation omitted). Accordingly, Plaintiff cannot make out an Eighth Amendment violation on this basis.

at 311.   Moreover, within approximately one hour after Plaintiff's condition was discovered to have worsened the following night, he was reexamined by Cruz and "rushed" to an outside facility for inpatient treatment.  (Compl. ¶¶ 23-27.)

There is no indication that Defendants Cruz or Isabel acted with the requisite culpable state of mind akin to criminal recklessness or deliberately delayed taking action for the purpose of causing Plaintiff pain or prolonging his suffering.   Plaintiff was examined shortly after requesting medical attention, was placed on antibiotics for his infection, and was rushed to the hospital after his symptoms worsened.  Plaintiff simply has not demonstrated that Defendants Cruz or Isabel acted with deliberate indifference to Plaintiff's medical needs.[5]  *See McCluskey v. Vincent*, No. 11-2736, 2012 WL 5974215, at *3 (3d Cir. Nov. 30, 2012) (holding that plaintiff could not establish Eighth Amendment violation for failure to promptly send plaintiff to hospital for skin boils where plaintiff was provided treatment for his boils and where plaintiff was sent to the hospital for surgery after treatment proved ineffective); *c.f.*, *Liscio v. Warren*, 901 F.2d 274, 277 (2d Cir. 1990) (holding that defendant's actions could be found to constitute deliberate indifference where defendant failed to examine plaintiff over a three-day period), *overruled on other grounds*, *Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009).

### b.  Defendant Yaneka.

Plaintiff alleges that Defendant Yaneka refused Plaintiff all medical attention.  (Compl. ¶ 21.)  The Court finds that Plaintiff has failed to demonstrate that Yaneka acted with "deliberate indifference" to Plaintiff's medical needs.  Plaintiff alleges that Yaneka was informed that he had

---

[5] Plaintiff argues that Defendant Isabel was deliberately indifferent to Plaintiff's medical needs because he directed a course of treatment for Plaintiff without directly examining him.  (Pl.'s Mem. L. at 16.)  However, the Court finds that it was reasonable for Isabel to rely on the assessment of Plaintiff's condition provided to him by Cruz, a registered nurse employed by CMC.  Even assuming that Isabel's failure to examine Plaintiff prior to prescribing antibiotics amounted to negligence or malpractice, such an allegation is insufficient to sustain an Eighth Amendment claim.

"an infection on his stomach the size of a softball" and had a "blazing fever." (*Id.* ¶ 20.)  Yaneka was thus aware of "facts from which the inference could be drawn that a substantial risk of serious harm exists." *Hathaway*, 37 F.3d at 66.  However, Plaintiff has failed to allege that Yaneka actually drew the inference that a substantial risk of serious harm existed. *Id.*  Plaintiff claims that Yaneka would not see him because he had been seen by Cruz less than 24 hours earlier, and because Plaintiff was already receiving antibiotics and there was therefore nothing further she "could or would" do for him.  (Compl. ¶¶ 20-21.)  Yaneka's determination that Plaintiff did not require medical attention in light of his recent examination by Cruz and ongoing treatment does not rise to the level of criminal recklessness.  At most, Yaneka's decision not to examine Plaintiff constitutes mere negligence or malpractice, and therefore cannot form the basis of an Eighth Amendment violation.[6]  *See Gutierrez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997) (holding that plaintiff failed to allege deliberate indifference where plaintiff endured isolated delays in treatment for a condition for which plaintiff had already been examined and been ordered a course of treatment).

## C.  Plaintiff's Allegations Against Defendant CMC

A municipality cannot be held liable under § 1983 for the acts of its employees solely on a theory of *respondent superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658,

---

[6] The cases that Plaintiff relies upon in his opposition papers do not compel a different outcome.  In *Archer v. Dutcher*, 733 F.2d 14 (2d Cir. 1984), the Second Circuit reversed the district court's grant of summary judgment for the defendant because there was a dispute "as to whether legitimate medical claims were deliberately disregarded as punishment for past breaches of the disciplinary code." *Id.* at 17.  The district court in *Johnson v. Wright*, 234 F. Supp. 2d 352, 362 (S.D.N.Y. 2002), held that the plaintiff stated an Eighth Amendment claim where he alleged that he was denied his prescribed treatment for 15 months pursuant to a policy denying Hepatitis C treatment to prisoners who had tested positive for drugs.  *Id.* at 362.  Here, Plaintiff has failed to allege facts from which the inference could be drawn that he was purposely denied treatment as punishment for past behavior or pursuant to a policy of CMC, or for any other reason.  Rather, as in *Gutierrez*, Yaneka made a determination, rightly or wrongly, that he had already been examined and ordered an appropriate course of treatment.  *Gutierrez*, 111 F.3d at 1374-75.

691 (1978).[7]  A § 1983 claim against a municipality can only be sustained if the action that is

alleged to be unconstitutional was the result of an official policy or custom.  *Id.* at 690-94.  Thus,

a plaintiff must allege that such a municipal policy or custom is responsible for his or her injury.

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997), *reh'g denied*, 520

U.S. 1283 (1997).

The Second Circuit has established a two prong test for § 1983 claims brought against a

municipality.  First, the plaintiff must prove "'the existence of a municipal policy or custom in

order to show that the municipality took some action that caused his injuries beyond merely

employing the misbehaving [official].'"  *Johnson v. City of New York*, No. 06 Civ. 09426

(GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of*

*Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff must establish a causal

connection between the policy or custom and the alleged deprivation of his constitutional rights.

*Id.*

To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the

existence of:

> (1) a formal policy which is officially endorsed by the
> municipality; (2) actions taken or decisions made by government
> officials responsible for establishing municipal policies which
> caused the alleged violation of the plaintiff's civil rights; (3) a
> practice so persistent and widespread that it constitutes a custom or
> usage and implies the constructive knowledge of policy-making
> officials; or (4) a failure by official policy-makers to properly train

---

[7] CMC, as a private company providing medical care to prisoners at the Dutchess County Jail on behalf of the
County, may be liable under a municipal liability theory if it maintains a custom or policy that causes a violation of
a prisoner's constitutional rights, and is found to be acting under the color of state law.  *Shomo v. City of New York*,
579 F.3d 176, 185 n.3 (2d Cir. 2009) (allowing prisoner to replead municipal liability claim against private medical
provider to determine if it was acting under color of state law); *see also Sybalski v. Indep. Group Home Living
Program, Inc.*, 546 F.3d 255, 257-58 (2d Cir. 2008) (per curiam) (explaining the circumstances under which the
actions of a private actor "are attributable to the state" and can be considered state action for purposes of Section
1983).  Because Plaintiff has failed to allege that such a policy exists, however, the Court does not address the
question of whether Plaintiff alleged facts sufficient to show that CMC acted under color of state law.

17

> or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (quoting *Moray* and updating citations to cases).

Here, Plaintiff claims that CMC is liable under § 1983 under two theories:  (1) that CMC failed to properly train, supervise, and control its employees; and (2) that CMC had a policy of making medical decisions based on cost and encouraged its employees to do the same.[8]  (Pl.'s Mem. L. at 19.)

Even on a liberal reading of the Complaint, Plaintiff has failed to allege a failure by CMC to properly train or supervise its employees "to such an extent that it amounts to deliberate indifference" to the rights of the prisoners.  Similarly, Plaintiff's speculative and conclusory allegations of an unlawful custom or practice are insufficient to support a claim of municipal liability against CMC.  Plaintiff's theory that CMC has a policy of making medical decisions based on cost is based on mere conjecture.  Even accepting as true Plaintiff's allegation that the number of suicides and deprivations of medical treatment has increased since CMC became the medical provider at the prison, Plaintiff has failed to allege any factual nexus between these incidents and any alleged policy or custom by CMC.  Moreover, Plaintiff may not satisfy the pleading standard required by Rule 8 by alleging that if "by way of discovery" he can prove that CMC has a policy of making medical decisions based on cost, then both CMC and Defendant

---

[8] Plaintiff appears to allege a *Monell* claim against Defendant Anderson as a result of his contractual relationship with CMC.  However, because Plaintiff brings his claims against Anderson "in his individual capacity," (Compl. ¶ 45), the Court will address Plaintiff's allegations against Anderson under the theory of "supervisory liability." *Davis v. Cnty. of Nassau*, 355 F. Supp. 2d 668, 675 (E.D.N.Y. 2005) (noting that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," whereas "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

Anderson become liable.  (Compl. ¶ 37.)  Where a plaintiff's complaint is deficient under Rule 8, "he [or she] is not entitled to discovery."  *Iqbal*, 556 U.S. at 686.  Accordingly, Plaintiff has failed to satisfy the first prong of the municipal liability test and dismissal is therefore required.

### D.  Plaintiff's Allegations Against Defendant Anderson

Because Plaintiff brings his action against Defendant Anderson "in his individual capacity," (Compl. ¶ 45), the Court will address Plaintiff's allegations against Anderson under the theory of "supervisory liability."  *See Davis*, 355 F. Supp. 2d at 675.  To sustain a § 1983 claim against a government official, a plaintiff must plead that the official had "personal involvement" in the alleged deprivation of the plaintiff's constitutional rights.  *Garcia v. Watts*, No. 08 Civ. 7778 (JSR), 2009 WL 2777085, at *12 (S.D.N.Y. Sept. 1, 2009).  The Second Circuit has held that liability of a supervisor under § 1983 can be shown in one or more of the following ways:

> 1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Plaintiff does not allege any facts upon which Defendant Anderson could be found to have been personally involved in the alleged constitutional violation.  Plaintiff does not claim that Anderson actually participated in the medical treatment of Plaintiff or that he failed to remedy the alleged wrong or act on information suggesting that the alleged deprivation was occurring.  Moreover, Plaintiff does not allege that Anderson supervised the Defendants involved

19

in Plaintiff's medical care.  Finally, to the extent that Plaintiff alleges that Defendant Anderson

acquiesced to CMC's alleged policy or custom of making medical decisions based on cost, the

Court has already found that Plaintiff has failed to allege that any such policy existed.

Accordingly, Plaintiff's claims against Defendant Anderson must be dismissed.

## IV. Conclusion

For the reasons set forth above, Defendants Yaneka's and Cruz's motion to dismiss for

insufficient service of process is DENIED.  Defendants' motion for judgment on the pleadings is

GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion and close

this case.  (Doc. 34.)


It is SO ORDERED.

Dated:    February 25, 2013
          White Plains, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.